## FROST *v.* MARTIN.

A payment made by a joint promissor on a note due, cannot, by an arrangement with the payee, be revoked so as to revive the debt against the other parties.

ASSUMPSIT, for $250, money had and received and money paid, laid out and expended.

The plaintiff filed a specification, claiming to recover the sum of $200, and interest thereon from September 21, 1849, being the amount of money paid by him to the defendant, towards and for a promissory note, signed by Alpheus Staples, David Pray, and Thomas G. Morse, dated April 23, 1849, for $455, payable to Simon Locke, John A. Smiley and Thomas Shapleigh, or order, in ninety days, with interest, which note was by the defendant, on or about October 1, 1849, sold and delivered to the plaintiff as being then all due and unpaid, and for which the plaintiff paid him the full sum of $455, and interest from the date thereof to the time of sale, and which note was not, at the time of said sale, all due and unpaid, but upon which there had been paid, prior to the time of said sale, by said Staples, one of the signers, to said Shapleigh, one of the payees of the note, the sum of $200, in part payment and satisfaction of the note.

The cause was tried upon the general issue, and the plain-

tiff having introduced evidence of the sale of the note described in the specification, and the payment thereon of $200, prior to the sale, as set forth in the specification, the defendant introduced evidence tending to show that when the payment was made by Staples to Shapleigh, the note was supposed by them to be in the possession of Locke, one of the payees; that Shapleigh gave a receipt to Staples for the $200, specifying therein that said sum was to be indorsed on the note; that in the course of an hour or two after receiving the money, Shapleigh learned that Locke had delivered the note to the defendant, under an agreement to transfer it to him, and had received the amount of the note as the consideration for such transfer; that Shapleigh thereupon, without indorsing the payment upon the note, offered to Staples to pay back to him the $200; that Staples told him to keep the money and apply it upon other demands held by Shapleigh against Staples, and that Shapleigh retained it with the understanding between him and Staples that it was to be so applied. The plaintiff contended that Staples and Shapleigh could not, by any agreement among themselves, divert the money so paid to Shapleigh to any other purpose than payment upon the note, without the consent of the other signers; but the court ruled otherwise.

The plaintiff then introduced evidence tending to show that the note was given for the debt of Staples, and that Morse and Pray signed it as his sureties; and that the money so paid by Staples to Shapleigh, was part of a loan procured at the South Berwick Bank, upon the promissory note of Staples and Morse, which had been signed by Morse, for the purpose of furnishing funds to Staples for the payment of the $455 note, and under an agreement between them that the loan should be so applied; and that the receipt given by Shapleigh to Staples for the $200, was, in a few days after the payment of the $200 by Staples to Shapleigh, delivered over by Staples to Morse, and that Morse continued to hold said receipt until, upon a final settlement

of the note between the plaintiff and the signers of the note, it was received by the plaintiff, of Morse, and allowed as a payment of that amount upon the note.

The court instructed the jury, that if the money so paid by Staples to Shapleigh was his (Staples) money, procured without the aid of either of the sureties, and without an understanding between him and either of the sureties that it was to be applied to the payment of the note, then Shapleigh and Staples might, after the money had been paid over by Staples to Shapleigh, by an agreement between them, apply the money to other demands, without the consent of the other signers of the note; and that if in that case there was such an agreement between Staples and Shapleigh, the payment of the money by Staples to Shapleigh was not to be considered as a payment upon the note; but if the money so paid to Shapleigh was procured by the aid of either of the sureties, for the purpose of payment on the note, and under an agreement between Staples and such surety that it was to be so applied, then it was not competent for them (Staples and Shapleigh,) after the money had been paid over to Shapleigh for that purpose, to divert it to any other purpose without the consent of the surety; and that, under this state of facts, the payment to Shapleigh was to be considered as a payment upon the note, and as extinguishing the debt *pro tanto*.

Evidence was introduced by both parties bearing upon the question whether the plaintiff, at the time of the sale of the note by the defendant to him, had knowledge of all the material facts in relation to the payment by Staples to Shapleigh; and the court instructed the jury that if, at the time of the sale, the plaintiff knew all the facts in relation to the payment, material to the question whether that payment was to be considered, in law, as a payment upon the note, he was not entitled to recover, although he might be under a misapprehension as to the legal effect and operation of any of those facts upon that question.

The court, being requested by the plaintiff's counsel to instruct the jury, that if the parties both knew all the material facts in relation to the payment to Shapleigh, still, if they both, at the time of the sale, understood and believed that said payment was not, in law, a payment upon the note, and that the plaintiff would be entitled to recover of the signers the whole amount of the note, notwithstanding the payment; and if the sale was made on this understanding and belief, and the whole amount of the note was paid by the plaintiff to the defendant therefor, that, in that case, the plaintiff was entitled to recover, declined so to instruct the jury, but instructed them as above stated; to which rulings and instructions of the court the plaintiff excepted.

The jury returned a verdict for the defendant, and the plaintiff moved that the same be set aside, and a new trial granted, on account of the aforesaid alleged erroneous rulings and instructions of the court.

*R. Eastman, Christie & Kingman,* for the plaintiff.

*Jordan,* with whom was *McCrillis,* for the defendant.

1. Staples and Shapleigh were each competent persons to contract.

2. Upon the supposition that $200 was Staples' money, they had a right, each consenting, to rescind their contract and make a new one.

3. If Staples had received the $200 back, when offered by Shapleigh, or agreed with him that it should be applied upon other demands, he could not set it up in payment, in a suit against him on this note.

4. If Staples could not set it up in payment of this note, the sureties could not.

5. The sureties acquired no rights in the money as a payment or release upon the note *pro tanto,* because it was paid by Staples to Shapleigh under a false impression of the facts then existing. The parties had a right to correct.

their own mistake, and the law will not apply the payment, otherwise than they agreed.

6. Where money is paid with a full knowledge of all the facts, or with the means of such knowledge, it cannot be recovered back on account of the payment having been made in ignorance of the law. *Peterborough* v. *Lancaster*, 14 N. H. Rep. 382.

WOODS, J. The plaintiff, in this case, seeks to recover back a part of the price which he paid the defendant for the note of Staples and others, upon the ground that when he bought the note, $200 had in fact been paid towards it by Staples, of which the plaintiff was, at the time of the purchase, ignorant. The case distinctly finds that such a payment had been made by Staples to Shapleigh, one of the payees, entitled at the time to demand and receive such payment. But it is said that soon after this payment had been made and acknowledged, by a written paper from Shapleigh to Staples, these two, for reasons which appear in the case, agreed that that application of the $200 should be annulled, and the sum appropriated to different objects.

Before this payment was made the note stood good for its entire face against Shapleigh, Pray and Morse, either of whom had a right at this time to pay it, and so to discharge the others. The liability of each to pay the note would have been at an end the moment that either of them should pay it; and this liability to pay any part of it was of course dissolved *pro tanto* the moment such part should be paid by either. But there is nothing in the relation of joint promissors upon a note, that enables one of them who has, by having paid the note, discharged the liability of the others, to make an arrangement with the payee to restore it again.

There seems to be no difficulty in applying these clear principles to the present case. Staples, who was the principal, made a payment upon the note to Shapleigh, a payee, having undoubted authority to receive the payment. The

Frost *v.* Martin.

act was consummated; nothing could have been added to make it more perfect. Pray and Morse, of course, ceased to be longer liable to the extent of that payment.

Whether Staples and Shapleigh, at any time, whether a long or a short time after the payment, might have altered their arrangements so as to revive the debt against Staples, is not material as regards the rights of this plaintiff. He bought and paid for a note of $455 against Staples, Morse and Pray. But as to $200, it turns out that the two last named parties were not liable at the time of the purchase.

Whether the money belonged to Staples, or in part to the other signers, is not material. Supposing it to have been his, he paid it in discharge of a duty towards his sureties, and could not, without their consent, reclaim it.

As to the first point, therefore, we hold the ruling of the court below to have been erroneous. No opinion is necessary to be given as to the other questions arising on the case. The verdict should, therefore, be set aside, and

*A new trial granted.*